**Whitney Stark**, OSB No. 090350
Email: whitney@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
ALBIES & STARK LLC
1500 SW First Ave., Suite 1000
Portland, Oregon 97201
Telephone: (503) 308-4770
Facsimile: (503) 427-9292

**Attorneys for Plaintiffs**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SARAH HALL, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PORTLAND; and ASPEN BREUER, an individual; <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br> 42 U.S.C. § 1983 (Violations of Equal Protection and First Amendment); ORS § 659A.030(1)(a-b) & (f) <br><br> **Jury Trial Requested** |

### INTRODUCTION

1.

Plaintiff Sarah Hall brings this action alleging that Defendants City of Portland and Aspen Breuer, City of Portland Fire & Rescue Captain, violated plaintiff's rights under 42 U.S.C. § 1983 and ORS § 659.030 to be free from sex/gender discrimination and disparate treatment in employment.

PAGE 1 – COMPLAINT

## PARTIES

2.

Plaintiff Sarah Callegari Hall ("Hall" or "plaintiff") is, and at all material times was, a resident of the State of Oregon.

3.

Defendant City of Portland ("City" or "defendant") is a municipal corporation in the state of Oregon. Defendant is liable for the tortious conduct of its agents and employees pursuant to ORS § 30.265(1) and ORS § 30.285(1). Defendant is a "person" for purposes of 42 U.S.C. § 1983. Defendant is a "public employer" for the purposes of ORS § 659A.203.

4.

At all material times, Defendant City was plaintiff's employer.

5.

At all material times, Defendant Aspen Breuer was a Captain at City of Portland Fire & Rescue. Defendant Breuer is named in his individual capacity and is a "person" for purposes of 42 U.S.C. § 1983. At all material times, Defendant Breuer was a City employee and/or agent of the City acting under color of law.

## JURISDICTION & VENUE

6.

This Court has jurisdiction over plaintiff's claims for monetary and other relief under 28 U.S.C. § 1331, federal question jurisdiction. This Court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims arise from the same nucleus of operative facts as the federal claims. The state claims are so related to the federal claims that they form part of the same case or controversy and would ordinarily be expected to be tried in one judicial proceeding.

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

7.

Venue is appropriate in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the underlying acts, omissions, injuries and related facts and circumstances giving rise to the present action primarily occurred in this judicial district. The events giving rise to plaintiff's claims occurred primarily within Multnomah County, therefore the Portland Division of the United States District Court for the District of Oregon is the appropriate divisional venue pursuant to LR 3-2(a).

**FACTUAL ALLEGATIONS**

8.

Plaintiff Sarah Hall has over 25 years of combined experience as a firefighter and paramedic. She earned a degree in applied fire sciences. Since 2022, Ms. Hall has been the Oregon representative for the Women in Fire organization.

9.

In March 2024, the City hired Ms. Hall into a lateral firefighter position within the Portland Fire & Rescue bureau ("PF&R"). While entry-level recruits complete a six to eight-month training program, lateral hires follow an accelerated five-month training program. Ms. Hall was hired into the lateral position based on her qualifications and prior service.

10.

On or around March 28, 2024, Ms. Hall began her lateral training at PF&R's Training Academy Center ("TAC"). TAC operates four days a week with ten-hour training sessions each day. Recruits are required to meet benchmarks at TAC in order advance to training at PF&R's Station 2, where they respond to emergency calls and continue daily training.

/ / /

11.

During her time at TAC, from approximately March through the end of May 2024, TAC trainers provided Ms. Hall with positive evaluations that reflected her competence and leadership, that she met benchmarks, and that she had superior performance on exams. For example, among other things, TAC trainers' written comments included that Ms. Hall demonstrated "a lead by example mentality," that she "consistently [acted] as a source of support and advocacy for her fellow recruits," and "showed a level of self-awareness making her able to change her behavior in order to adapt to unforeseen challenges."

12.

TAC trainers' evaluations confirmed that Ms. Hall met all of PF&R's threshold requirements and benchmarks without issue. Specifically, among other things, TAC trainers' feedback reflected no concerns with Ms. Hall's physical strength or technical abilities, and that Ms. Hall had "zero deficiencies in skills, abilities, or knowledge."

13.

In approximately June 2024, Ms. Hall began the next phase of training at PF&R's Station 2. At the time, PF&R Captain Aspen Breuer led the Station 2 training. There were seven recruits in her training group, which included herself and one other female.  The other recruits were male.

14.

Almost immediately upon her arrival at Station 2, and throughout the duration of her employment there, Captain Breuer subjected Ms. Hall to hostile and discriminatory treatment. He repeatedly isolated her, cornered her, and yelled that she "did not belong" at PF&R. He berated her both in private and in front of others. He questioned her qualifications and shared

his skepticism about whether she was qualified to be a lateral hire. He did not treat Ms. Hall's male counterparts in this same way.

15.

Captain Breuer also subjected Ms. Hall to additional double standards and unfair criticism especially when compared to her male counterparts. For example, when Ms. Hall and a male recruit reported to Captain Breuer without their axes, Captain Breuer wrote Ms. Hall up but allowed the male recruit to go retrieve an axe without incident. As another example, during an axe drill, Ms. Hall followed protocol by assisting her partner with a tool hand-off and completed the correct ladder steps. Despite her compliance, Captain Breuer wrote her up for "not being prepared" and for "using her partner's equipment," even though the task required shared use of tools. During another encounter, Captain Breuer screamed at Ms. Hall words to the effect that if he or anyone else asked Ms. Hall something, "the only words out of your fucking mouth are yes or no." He did not treat male recruits in this way.

16.

Further, under Captain Breuer, Ms. Hall and the only other female recruit were never scheduled to work together on the same rig assignment, even though it was supposed to be a rotating shift. For example, for each shift assignment, two recruits were assigned to Engine 2 and two recruits were assigned to Truck 2. However, Ms. Hall and the only other female recruit were never assigned to positions together on the same apparatus, even though the rotating assignments regularly included all-male assignments and the same male recruits working together on the same apparatus. When Ms. Hall raised her concern about this discriminatory practice to another trainer and apparatus operator, he confirmed that it was unusual and allowed Ms. Hall and the other female recruit to be assigned together when he had responsibility over that shift assignment.

17.

In approximately late July 2024, Captain Breuer manipulated Ms. Hall's training evaluations to undermine her progress and portray her as unfit. Initially, a lieutenant trainer completed Ms. Hall's formal evaluation and determined she had met all expectations. Captain Breuer altered that evaluation, changing multiple ratings from "acceptable" to "unacceptable" and lowering other additional scores. He modified the narrative, changing the original evaluation of "meeting all expectations" to "not meeting expectations," and added additional negative and inaccurate language that Ms. Hall lacked the "strength, stamina, and fitness required for duty." Captain Breuer's altered evaluation also claimed (inaccurately) that Ms. Hall did not perform basic duties during training scenario, and falsely implied that PF&R had provided Ms. Hall with extensive individualized support, when no such supplemental training occurred or was necessary.

18.

Captain Breuer told Ms. Hall that he had changed her evaluation to show that there was no place for her at Portland Fire and that she was not fit for duty.

19.

On or around August 21, 2024, Captain Breuer removed Ms. Hall from the scheduled shift just prior to her final evaluation exam, which, if passed, would have allowed Ms. Hall to begin working regular shifts in the company as a PF&R firefighter paramedic. He thus denied Ms. Hall the opportunity to take and pass the final evaluation test, denied her that opportunity to begin working regular shifts in the company, and instead escorted her to the office of the Division Chief of Training, AJ Jackson.

/ / /

20.

During the meeting with Chief Jackson, Captain Breuer repeated his claims that Ms. Hall was not fit for duty and specifically had "strength issues." Chief Jackson then delivered Ms. Hall a written notice placing her on administrative leave as of that day, August 21, 2024 until "otherwise notified." The directive did not inform Ms. Hall as to why she was placed on administrative leave. The directive barred Ms. Hall from entering any Fire Bureau facility or City property while she was on leave; required her to remain available from Monday through Friday, 8:00am-5:00pm; and required her to be able to report to work within a two-hour period.

21.

On or around August 28, 2024, Chief Jackson called Ms. Hall in for a meeting. TAC Trainer Christine Pezzulo was also present. Chief Jackson told Ms. Hall that the training documentation reflected concerns with Ms. Hall's basic skills, and as a result, Ms. Hall could either resign or go through the basic <u>entry</u> level training academy, which she had not been required to perform initially as a lateral hire. Ms. Hall disputed the claims regarding her abilities and reported her concern that she had been treated unfairly and discriminated against based on gender. Trainer Pezzulo confirmed that the claimed deficiencies were untrue, and that she had never had any concerns with Ms. Hall's skills or abilities, including her strength.

22.

During this meeting with Chief Jackson, Ms. Hall reported her experience of gender discrimination. In her report of gender discrimination, Ms. Hall explained that the discriminatory conduct was based on treatment by Captain Breuer and other training staff at Station 2. She recounted specific instances of conduct, provided written documentation, and identified numerous witnesses with direct knowledge of her performance and hostile and discriminatory

PAGE 7 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

conduct she endured. Chief Jackson told her she would continue the administrative leave while her complaint was investigated.

23.

However, to Ms. Hall's knowledge, during its investigation, PF&R's Professional Standards Office failed to interview several—if not all—key witnesses and did not interview any other women who were subjected to the same or similar unequal treatment, even though they had been identified as witnesses.

24.

The City's alleged investigation took nearly eight months to conclude. Ms. Hall remained on administrative leave throughout the entire duration.

25.

On or around May 21, 2025, Ms. Hall received an email stating that PF&R's Professional Standards Office, in conjunction with the City's Bureau of Human Resources, had completed the investigation. Professional Standards Manager Nicolas Ball notified Ms. Hall that her claims were "not sustained," citing "insufficient evidence."

26.

Ms. Hall requested a review into the Professional Standards investigation. In response, City Human Resource's Angela Tran confirmed that she had reviewed the investigation and agreed with its findings.

27.

On or around May 28, 2025, PF&R called Ms. Hall into a mandatory meeting and issued her a written notice extending her probationary period by one year. The written notice claimed that because Ms. Hall was placed on paid administrative leave from August 21, 2024, to May 28, 2025, she could not complete the training process and therefore required further evaluation.

PAGE 8 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

It also provided that Ms. Hall's probationary period was extended through July 17, 2026, and she would be required to complete another training academy.

28.

As of May 28, 2025, the City ended Ms. Hall's paid administrative leave and informed her she would either be put into an unpaid status, separate and be rehired, resign, or be terminated.

29.

On or around June 13, 2025, Ms. Hall began a medical leave.

30.

On September 4, 2025, when her leave ended, Ms. Hall requested clarification as to where she was to report to work. Division Chief James Sestric informed Ms. Hall that she could join the next training academy "tentatively" scheduled for January 2026, that it was an entry-level academy, and that there would be no lateral training academy. He told Ms. Hall that she would be required to take the entry-level training academy, and that until then her employment status would be "an unpaid status, separate, or rehire."

31.

Defendant City did not pay or employ Ms. Hall beginning approximately September 4, 2025. Regardless of how the City or PF&R categorized Ms. Hall's employment status, she was effectively terminated and not paid anything as of that date, and her benefits ended. On January 6, 2026, Ms. Hall wrote a letter confirming that she understood she had been terminated.

32.

To Ms. Hall's knowledge, Defendants have subjected other women to similar discrimination and unfair treatment. For example, PF&R has required other women recruits to repeat training academies. In contrast, male recruits who were falling short of benchmarks were

not similarly required to repeat the training academy but instead allowed extra time and supports. As another example, for some male recruits who actually failed the final evaluation test, PF&R allowed them extensions, extra training, and additional opportunity to complete the test rather than, for example, failing them and requiring them to undergo or repeat entry-level basic training academy. Yet Defendants did not do so for Ms. Hall when she purportedly also needed extra training or opportunities, instead denying her the ability to take the final exam, and requiring her to re-take an entire entry-level academy.

33.

Prior to the institution of this action, Plaintiff provided timely notice of her claims to all necessary parties pursuant to ORS § 30.275.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection)**
**(Against all Defendants)**

34.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

35.

By the acts and omissions described herein, Defendants discriminated against Plaintiff based on sex/gender, in violation of her right to equal protection of the laws enshrined in the Fourteenth Amendment to the United States Constitution and enforced through 42 U.S.C. § 1983.

36.

Plaintiff had a clearly established right to be free from unlawful discrimination based on sex/gender.

PAGE 10 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

37.

Defendants deprived plaintiff of her Fourteenth Amendment right to be free of sex/gender discrimination by treating her differently and worse than her male counterparts, subjecting her to a severe and pervasive hostile work environment based on sex/gender, denying her the opportunity to take the final exam and denying her the opportunity to work in a position in the company, placing her on extended leave, failing to adequately investigate or respond to her complaints of discrimination, extending her probationary period, requiring her to re-take an entire entry-level training academy, and by constructively terminating her employment based on sex/gender.

38.

Defendant City is liable for the deprivation of Plaintiff's Fourteenth Amendment rights because the deprivation was pursuant to a City custom, policy, or practice of discriminating against women, retaliating against individuals who oppose sex discrimination, and of having an ineffective complaint mechanism that permits continued discrimination and retaliation. The deprivation was also pursuant to a City custom, policy, or practice of terminating probationary employees who oppose misconduct or unlawful conduct during their probationary period.

39.

Defendant City is also liable for the deprivation of Plaintiff's Fourteenth Amendment Rights because the unlawful decisions were made or approved by persons in policymaking positions for Defendant City. For example, Breuer, AJ Jackson, and James Sestric had final policy making authority for City and engaged in the acts alleged herein while acting as final policymakers for City.

/ / /

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

40.

Defendant City is further liable for the deprivation of Plaintiff's Fourteenth Amendment rights because persons in policy-making positions, including Breuer, AJ Jackson, James Sestric, Nicholas Ball, and/or Angela Tran ratified the unlawful conduct alleged herein knowing the basis of the unlawful conduct.

41.

Plaintiff's sex/gender was a factor in the unlawful treatment alleged herein. Male recruits with a similar record would not have been treated differently, harassed, baselessly criticized including for things like their physical strength, prohibited from taking the final exam, denied an opportunity to work on the line, forced to re-take entry-level training academy, and constructively terminated.

42.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost wages, lost fringe benefits, lost PERS benefits and pre-judgment interest in an amount to be determined at trial, lost income from future employment, impaired earning capacity, and damage to her career advancement.

43.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to her reputation, emotional distress, and other compensatory damages in an amount to be determined at trial.

44.

On Plaintiff's claim against Defendant Breuer only, Plaintiff seeks punitive damages in an amount to be proven at trial.

45.

Plaintiff also is entitled to recover her reasonable attorneys' fees, expert fees, costs, and disbursements pursuant to ORS § 20.107 and 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1983 – First Amendment – Speech and Petition Clause)**
**(Against all Defendants)**

46.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

47.

By the acts and omissions described herein, Defendants retaliated against Plaintiff based on exercising her First Amendment rights in violation of her rights enshrined in the First Amendment to the United States Constitution and enforced through 42 U.S.C. § 1983.

48.

Plaintiff had a clearly established right to engage in speech on a matter of public concern, including the right to oppose sex/gender discrimination of Defendants.

49.

Plaintiff's report of gender/sex discrimination and harassment was made in her capacity as a citizen and was speech on a matter of public concern.

50.

Defendants deprived plaintiff of her First Amendment rights by treating her differently and worse than her counterparts, denying her the opportunity to take the final exam and denying her the opportunity to work in a position in the company, placing her on extended leave, failing to adequately investigate or respond to her complaints of discrimination, extending her

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

probationary period, requiring her to re-take an entire entry-level training academy, and by constructively terminating her employment.

51.

Defendant City is liable for the deprivation of Plaintiff's First Amendment rights because the deprivation was pursuant to a City custom, policy, or practice of retaliating against individuals who oppose misconduct and unlawful discrimination, and of having an ineffective complaint mechanism that permits continued discrimination and retaliation.

52.

Defendant City is also liable for the deprivation of Plaintiff's First Amendment Rights because the unlawful decisions were made or approved by persons in policymaking positions for Defendant City. For example, Breuer, AJ Jackson, and James Sestric had final policy making authority for City and engaged in the acts alleged herein while acting as final policymakers for City.

53.

Defendant City is further liable for the deprivation of Plaintiff's FourteenthAmendment rights because persons in policy-making positions, including Breuer, AJ Jackson, James Sestric, Nicholas Ball, and/or Angela Tran ratified the unlawful conduct alleged herein knowing the basis of the unlawful conduct

54.

Plaintiff's report and opposition to sex/gender discrimination and harassment was a factor in the unlawful treatment alleged herein.

55.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost wages, lost fringe benefits,

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

lost PERS benefits and pre-judgment interest in an amount to be determined at trial, lost income from future employment, impaired earning capacity, and damage to her career advancement.

56.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to her reputation, emotional distress, and other compensatory damages in an amount to be determined at trial.

57.

Plaintiff also is entitled to recover her reasonable attorneys' fees, expert fees, costs, and disbursements pursuant to ORS § 20.107 and 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
(ORS § 659A.030(1)(a)-(b) – Sex/Gender Discrimination
(Against Defendant City)

58.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

59.

Defendant City violated ORS § 659A.030(1)(a)-(b) by subjecting Plaintiff to disparate treatment and a sex/gender based hostile work environment that was severe and pervasive. The hostile work environment was ongoing.

60.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost wages, lost fringe benefits, lost PERS benefits and pre-judgment interest in an amount to be determined at trial, lost income from future employment, impaired earning capacity, and damage to her career advancement.

61.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to her reputation, emotional distress, and other compensatory damages in an amount to be determined at trial.

62.

Plaintiff also is entitled to recover her reasonable attorneys' fees, expert fees, costs, and disbursements pursuant to ORS § 20.107 and ORS § 659A.885.

**FOURTH CLAIM FOR RELIEF**
**(ORS § 659A.030 (1)(f) – Unlawful Retaliation)**
**(Against Defendant City)**

63.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

64.

Defendant City violated ORS § 659A.030(1)(f) by subjecting Plaintiff to discrimination and retaliation because she opposed and complained about sex/gender discrimination.

65.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost wages, lost fringe benefits, lost PERS benefits and pre-judgment interest in an amount to be determined at trial, lost income from future employment, impaired earning capacity, and damage to her career advancement.

66.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to her reputation, emotional distress, and other compensatory damages in an amount to be determined at trial.

PAGE 16 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

67.

Plaintiff also is entitled to recover her reasonable attorneys' fees, expert fees, costs, and disbursements pursuant to ORS § 20.107 and ORS § 659A.885.

**FIFTH CLAIM FOR RELIEF**
**(ORS § 659A.203 – Unlawful Retaliation)**
**(Against Defendant City)**

68.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

69.

Defendant City violated ORS § 659A.203 by subjecting Plaintiff to retaliation because she opposed and complained about sex/gender discrimination.

70.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic losses including, but not limited to, lost wages, lost fringe benefits, lost PERS benefits and pre-judgment interest in an amount to be determined at trial, lost income from future employment, impaired earning capacity, and damage to her career advancement.

71.

As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered and will continue to suffer noneconomic damages in the form of injury to her reputation, emotional distress, and other compensatory damages in an amount to be determined at trial.

72.

Plaintiff also is entitled to recover her reasonable attorneys' fees, expert fees, costs, and disbursements pursuant to ORS § 20.107 and ORS § 659A.885.

PAGE 17 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE. #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**WHEREFORE**, Plaintiff requests a trial by jury and prays for judgment from Defendants as follows:

(a)  On all Plaintiff's Claims for relief, an award of economic damages including lost wages, lost fringe benefits, lost PERS benefits and pre-judgment interest in an amount to be determined at trial; Plaintiff also seek an award of damages for impaired earning capacity and damage to her career advancement;

(b)  On all Plaintiff's Claims for relief, an award of damages for mental and emotional distress, and other compensatory damages in an amount to be determined at trial;

(c)  On all Plaintiff's Claims for relief, an award of attorney fees, costs, and disbursements, including pursuant to ORS § 20.107, ORS § 659A.885, and 42 U.S.C. § 1988;

(d)  On all Plaintiff's Claims for relief against Defendant Breuer only, punitive damages in an amount to be proved at trial;

(e)  On all Plaintiff's Claims for relief, a Declaration that all Defendants violated Plaintiff's constitutional rights to Equal Protection and rights under the First Amendment and rights to be free from discrimination and retaliation under state and federal law;

(c)  Pre and post judgment interest in accordance with law; and

(d)  Any other relief this Court may determine to be fair and just.

DATED: February 24, 2026

Respectfully submitted by:

 s/ Whitney Stark
Whitney Stark, OSB No. 090350
whitney@albiesstark.com
Maya Rinta, OSB No. 195058
maya@albiesstark.com

*Attorneys for Plaintiff*