IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH HALL,                                         Case No. 3:26-cv-00363-SB

                     Plaintiff,                     **OPINION AND ORDER**

        v.

CITY OF PORTLAND; ASPEN BREUER,

                     Defendants.

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Sarah Hall ("Hall") filed this action against the City of Portland (the "City") and Captain Aspen Breuer ("Captain Breuer") (together, "Defendants"), asserting constitutional claims under 42 U.S.C. § 1983 ("Section 1983") and state law claims for sex discrimination and unlawful retaliation. (Compl., ECF No. 1.) The City moves to dismiss Hall's First Amendment claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Defs.' Mot. Dismiss ("Defs.' Mot."), ECF No. 8.)

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. For the reasons explained below, the Court denies Defendants' motion to dismiss.

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

Hall began working for Portland Fire & Rescue ("PF&R") in March 2024. (Compl. ¶ 8.) The City hired Hall into a lateral firefighter position based on her qualifications and experience and mandated that Hall complete an accelerated five-month training program. (*Id.* ¶ 9.) On March 28, 2024, Hall started her training program at PF&R's training academy center ("TAC"). (*Id.* ¶ 10.) PF&R requires trainees to complete certain benchmarks before they advance to Station Two where students continue daily training and learn to respond to emergency calls. (*Id.*)

Hall completed her training at TAC from March through May 2024. (*Id.* ¶ 10.) Hall received positive evaluations, met benchmarks, and performed well on exams. (*Id.* ¶¶ 11-12.) TAC trainers stated that Hall demonstrated "a lead by example mentality," that she "consistently [acted] as a source of support and advocacy for her fellow recruits," and "showed a level of self-awareness making her able to change her behavior in order to adapt to unforeseen challenges." (*Id.*)

In June 2024, Hall began the next phase of her training at PF&R's Station Two. (*Id.* ¶ 13.) Captain Breuer led the Station Two training. (*Id.*) There were seven recruits in Hall's training group, two of whom were women. (*Id.*) Hall alleges that Captain Breuer subjected her to hostile and discriminatory treatment, including publicly and privately berating her and questioning her qualifications. (*Id.* ¶ 14.) Hall also claims that Captain Breuer treated her differently than her male counterparts. (*Id.* ¶ 15.) For example, when Hall and a male counterpart reported to Captain Breuer without their axes, Captain Breuer wrote up Hall but not her male classmate. (*Id.*) On a different occasion, during an axe drill, Hall followed protocol by assisting a

---

[1] The Court assumes the facts Hall alleges in her complaint are true for the purpose of reviewing the present motion. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint.").

fellow trainee with a tool hand-off. (*Id.*) Nevertheless, Captain Breuer wrote Hall up for "not being prepared" and for "using her partner's equipment[.]" (*Id.*) On another date, Captain Breuer screamed at Hall, "the only words out of your fucking mouth are yes or no." (*Id.*)

Hall also alleges that under Captain Breuer, she and the only other female recruit were never scheduled to work together on the same rig assignment, even though it was supposed to be a rotating shift. (*Id.* ¶ 16.) When Hall notified another supervisor of her concerns, the instructor agreed it was unusual and assigned the two to work together on the same shift assignment. (*Id.*) Hall also alleges that Captain Breuer modified Hall's evaluations and changed numerous positive ratings to negative ones. (*Id.* ¶ 17.) Captain Breuer told Hall that he changed the ratings to show her that she was not fit for duty at PF&R. (*Id.* ¶ 18.) Captain Breuer also removed Hall from her scheduled shift immediately before her final examination, denying her the ability to take the exam. (*Id.* ¶ 19.)

On August 21, 2024, after he met with Captain Breuer, PF&R Chief AJ Jackson ("Chief Jackson") placed Hall on indefinite administrative leave. (*Id.* ¶ 20.) PF&R barred Hall from entering PF&R and City property, but required her to remain available during all business hours and report to work within any two-hour period. (*Id.*) On August 28, 2024, Chief Jackson called Hall in for a meeting with TAC Trainer Christine Pezzulo ("Pezzulo"). (*Id.* ¶ 21.) Chief Jackson told Hall that her evaluations reflected concerns with Hall's basic skills, and as a result, Hall could either resign or go through the basic entry level training academy, which she had not been required to perform initially as a lateral hire. (*Id.*) Hall claimed that the evaluations were inaccurate and Pezzulo agreed with her and stated that she never had any concerns with Hall. (*Id.*) During this meeting, Hall made a report of gender discrimination. (*Id.* ¶ 22.) Captain Jackson told Hall that she would remain on administrative leave while the department reviewed

PAGE 3 – OPINION AND ORDER

her complaint. (*Id.*) Hall alleges that PF&R's Professional Standards Office failed to interview key witnesses and did not interview any other women who were subjected to similar unequal treatment. (*Id.* ¶ 23.) The investigation lasted eight months. (*Id.* ¶ 24.)

On May 21, 2025, Professional Standards Manager Nicolas Ball notified Hall that her claims were "not sustained," citing "insufficient evidence." (*Id.* ¶ 25.) When Hall asked to review the Department's findings, human resources officer Angela Tran confirmed that she had reviewed the investigation and agreed with its findings. (*Id.* ¶ 26.) On May 28, 2025, PF&R issued Hall a written notice extending her probationary period by one year. (*Id.* ¶ 27.) On May 28, 2025, the City ended Hall's paid administrative leave and informed her she would either be put into an unpaid status, separate and be rehired, resign, or be terminated. (*Id.* ¶ 28.)

On June 13, 2025, Hall began medical leave. (*Id.* ¶ 29.) When Hall's leave ended, Division Chief James Sestric informed Hall that she could join the next training academy in January 2026, but that it would be an entry-level training. (*Id.* ¶ 30.) The City stopped paying Hall on approximately September 4, 2025 and on January 6, 2026, Hall wrote a letter to the City confirming that she understood she had been terminated. (*Id.* ¶ 31.)

## LEGAL STANDARDS

"In assessing a Rule 12(b)(6) motion to dismiss, the court must take all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (citing *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

PAGE 4 – OPINION AND ORDER

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Thus, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

**DISCUSSION**

## I.    FIRST AMENDMENT CLAIM

Defendants move to dismiss Hall's First Amendment claim on the ground that Hall's speech was not on a matter of public concern nor spoken as a private citizen and therefore not protected by the First Amendment. (Defs.' Mot. at 7-15.) Hall responds that it "is well settled law that a public employee's complaints of gender discrimination are legally protected speech spoken by a private citizen under the First Amendment to the U.S. Constitution[.]" (Pl.'s Resp. Defs.' Mot. Dismiss ("Pl.'s Resp.") at 4-10, ECF No. 12.)

### A.    Applicable Law

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege two essential elements: (1) a federal constitutional or statutory right was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citation omitted). "However, 'when public employees make statements pursuant to their official duties,

PAGE 5 – OPINION AND ORDER

the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

In the Ninth Circuit, courts "follow a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech."[2] *Id.* (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The Court looks to "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action . . . (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.* (citations omitted).

### B.    Analysis

#### 1.    Matter of Public Concern

Defendants argue that Hall's complaints about sex discrimination were not matters of public concern because they concerned a private personnel matter. (Defs.' Mot. at 5-7; Defs.' Reply Supp. Mot. Dismiss ("Defs.' Reply") at 3, ECF No. 15.) Hall responds that her speech concerned a public matter because she alleged systemic sex discrimination against a public body. (Pl.'s Resp. at 4-5.)

"Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined 'by the content, form, and context of a given statement, as

---

[2] The Ninth Circuit later clarified that "by 'sequential,' we mean only that all the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013).

revealed by the whole record.'" *Ritchie v. Staton*, No. 03:17-cv-00844-AC, 2018 WL 2276241, at *3 (D. Or. Mar. 28, 2018) (first citing *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012); and then quoting *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983)), *findings and recommendation adopted*, 2018 WL 2248450 (D. Or. May 16, 2018). "Out of these three factors, the content of the speech is generally the most important." *Id.* (simplified).

"The Ninth Circuit does not apply a rigid, multi-factor analysis to determine what speech is of public concern; rather, courts perform a 'generalized analysis of the nature of the speech,' to place the speech on 'a continuum ranging from matters of public concern to matters of purely personal concern.'" *Id.* (quoting *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011)). "On one end of that spectrum is speech that relates to matters of concern to the community, including political or social matters [and o]n the other end are individual grievances and personnel disputes that are irrelevant to the public's evaluation of government agencies." *Id.* (simplified). "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Id.* (first citing *Desrochers v. City of San Bernadino*, 572 F.3d 703, 710 (9th Cir. 2009); and then quoting *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 1995)).

### a.      Content

Defendants argue that Hall's complaint involved a personal dispute between herself and Captain Breuer that is not a matter of public concern. (Defs.' Mot. at 7-8.) Hall responds that complaints of discrimination are a matter of public concern. (Pl.'s Resp. at 5-7.)

The Ninth Circuit recently rejected the same arguments Defendants advance here. In *Ballou v. McElvain*, 29 F.4th 413, 428-29 (9th Cir. 2022), a female police officer alleged that the

PAGE 7 – OPINION AND ORDER

police chief retaliated against her for opposing sex discrimination in the workplace. The Ninth

Circuit held that "the content of [the plaintiff]'s expression is clearly protected by the First

Amendment." *Id.* at 429 ("It is long established, and [the defendant] does not dispute, that the

First Amendment protects a public employee's right to speak out against or petition the

government—including via a lawsuit—on 'matters of public concern.'" (quoting *Pickering v. Bd.*

*of Educ.*, 391 U.S. 563, 574 (1968))). Like Defendants here, the police chief in *Ballou* argued

that the plaintiff was seeking to "'constitutionalize the employee grievance,' and that her

complaints and lawsuit pertain[ed] only to matters of private, rather than public, concern." *Id.*

(citations omitted). The Ninth Circuit disagreed, finding that "[o]ur circuit case law squarely

forecloses [the police chief's] position." *Id.* The Ninth Circuit noted that "[s]ome subjects both

affect a public employee's personal interests and implicate matters of public concern" and that

"unlawful discrimination is such a matter[.]" *Id.* (citation omitted). The court examined its prior

decisions holding that "'the public has an interest in unlawful discrimination' in [c]ity

government, and that employee speech about such discrimination therefore involves matters of

public concern even if it arises out of a personal dispute." *Id.* (quoting *Rendish v. City of*

*Tacoma*, 123 F.3d 1216, 1224 (9th Cir. 1997))). The Ninth Circuit concluded that its "precedent

clearly establishes that speech by public employees about unlawful discrimination in the

workplace is inherently speech on a matter of public concern." *Id.* at 430.

Like in *Ballou*, Hall alleges that she spoke up about sex discrimination in city

government. Unlike situations where a city employee complains about her boss being a bully or

micro-manager (*see, e.g.*, *Desrochers*, 572 F.3d at 713 (finding that "saying one's boss is a bully

does not necessarily a constitutional case make" and the public would not "be truly interested

that two police sergeants believed their supervisor was a 'micro-manager,' 'autocratic' and

PAGE 8 – OPINION AND ORDER

'controlling'")), the public would surely be interested in whether PF&R discriminates against women firefighter trainees in the manner Hall alleges here.

For these reasons, the Court concludes that the content factor weighs in favor of Hall's speech being a matter of public concern. *See Rendish,* 123 F.3d at 1224 (holding that "the unequal treatment of some persons as compared with others by the City's judicial system is an issue of public concern"); *Burch v. Regents of the Univ. of Cal.,* 433 F. Supp. 2d 1110, 1130 (E.D. Cal. 2006) (holding that a wrestling coach's speech about gender discrimination against female wrestlers was a matter of public concern).

### b.    Form

Defendants argue that because Hall's "speech was essentially a one-on-one verbal conversation with Chief Jackson concerning [Hall's] subjective opinion of her personal conflicts with [Captain] Breuer, the form of the speech weighs against a finding of public concern." (Defs.' Mot. at 9-10.) Hall responds that "making an internal complaint—or even threatening to—can implicate the First Amendment." (Pl.'s Resp. at 7-8.)

The Court must consider the form of Hall's communications to identify whether the speech was of public concern. *See Weeks v. Bayer,* 246 F.3d 1231, 1235 (9th Cir. 2001). The Ninth Circuit has recognized that "a limited audience weighs against a claim of protected speech." *Desrochers,* 572 F.3d at 714; *see also Clairmont,* 632 F.3d at 1104 ("[W]hen speech takes the form of an internal employee grievance, and is not presented to the public, the form cuts against a finding of public concern.") (citation omitted).

"The relevance of non-disclosure to the public tracks the Supreme Court's acknowledgment that 'the public's interest in receiving the well-informed views of government employees engaging in civic discussion' is one of the primary purposes of its First Amendment retaliation jurisprudence." *Desrochers,* 572 F.3d at 714 (quoting *Garcetti,* 547 U.S. at 419).

PAGE 9 – OPINION AND ORDER

"Public speech is more likely to serve the public values of the First Amendment [while p]rivate speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Id.* (citation omitted); *see also McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (finding speech that deals with "individual personnel disputes and grievances" that "would be of no relevance to the public's evaluation of the performance of governmental agencies" generally is not of public concern).

Here, because Hall's relevant speech involved internal complaints only, the form of the speech standing alone weighs against a finding of public concern. *See Desrochers*, 572 F.3d at 703 (holding that "[b]ecause the speech at issue took the form of internal employee grievances which were not disseminated to the public," the form of the speech "cuts against a finding of public concern"); *see also Turner v. City and County of San Francisco*, 788 F.3d 1206, 1211 (9th Cir. 2015) (finding that the plaintiff's complaints about labor practices were "potentially significant in their implications" but nevertheless holding that the speech was not a matter of public concern in large part because the plaintiff voiced his grievance only internally, rather than speaking to the press or the city's board of supervisors); *Lisner v. City of Huntington Park*, No. EDCV1902009VAPSPX, 2020 WL 12893774, at *9 (C.D. Cal. Oct. 22, 2020) (finding the form of the plaintiff's verbal report about his superior's alleged misconduct "to a small or limited audience" in "a closed, non-public hearing . . . weigh[ed] against a claim of protected speech" (citing *Desrochers*, 572 F.3d at 714)).

### c.    Context

Defendants argue that the context factor weighs against a finding of public concern because Hall raised her concerns in a private conversation after she was told she was not meeting training standards. (Defs.' Mot. at 10-12.) Hall responds that the context factor weighs in her

PAGE 10 – OPINION AND ORDER

favor because "an employee's internal complaint of discrimination is protected by the First Amendment." (Pl.'s Resp. at 9-10.)

"Context addresses whether the purpose of the speech was to bring light to actual or potential wrongdoing or a breach of the public trust, or was merely motivated by dissatisfaction with one's employment situation." *Ritchie*, 2018 WL 2276241, at *4 (citing *Desrochers*, 572 F.3d at 714). Stated differently, the Court must evaluate why Hall spoke up about sex discrimination. *See Desrochers*, 572 F.3d at 715 (noting that "[t]he question of whether the speech was made to further some purely private interest is relevant to that inquiry . . . as is a determination of whether the speech was made in the context of a workplace power struggle") (simplified).

The Ninth Circuit has held that "[d]isputes over racial, religious, or other such discrimination by public officials are not simply individual personnel matters." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 927 (9th Cir. 2004). Specifically, "if a witness's testimony directly addresses governmental corruption or discrimination, it can satisfy the public concern test, even if it is offered in the course of a judicial or administrative proceeding that involves only purely private grievances or issues." *Id.*; *see also Ballou*, 29 F.4th at 429 ("Some subjects both affect a public employee's personal interests and implicate matters of public concern.").

In her meeting with Chief Jackson, "Hall disputed the claims regarding her abilities and reported her concern that she had been treated unfairly and discriminated against based on gender." (Compl. ¶ 21.) Notably, Hall's allegations included sex discrimination against other female trainees, not just herself. (*See id.* ¶ 16, "Hall and the only other female recruit were never assigned to positions together on the same apparatus, even though the rotating assignments regularly included all-male assignments and the same male recruits working together on the

PAGE 11 – OPINION AND ORDER

same apparatus."). Drawing all reasonable inferences in her favor, the Court concludes that Hall has plausibly alleged that her speech to Chief Jackson was made to expose discrimination in a public workplace rather than to address only her own private interest. *See Ballou*, 29 F.4th at 430 ("Thus, even if speech alleging discrimination in a public workplace were not *inherently* a matter of public concern . . . there is sufficient evidence in the record, drawing all inferences in [the plaintiff's] favor, . . . to conclude that the *specific* expression at issue here was on a matter of more than private concern."); *Drake v. City of Eloy*, No. CV-14-00670-PHX-DGC, 2015 WL 6168419, at *6 (D. Ariz. Oct. 21, 2015) (holding that the context factor weighed in favor of the plaintiffs because their "complaints alleged actual or potential wrongdoing committed by a law enforcement officer"); *Harris v. Bear Valley Cmty. Serv. Dist.*, No. 1:12-cv-01664-JLT, 2013 WL 4402823, at *7 (E.D. Cal. Aug. 14, 2013) (holding that because the plaintiff's "speech involved allegations of discriminations by [police] officers, her speech was a matter of public concern").

At the pleading stage, the Court finds that on balance, the content, form, and context of Hall's speech demonstrate that her speech was related to a matter of public concern and therefore protected by the First Amendment. *See Bustos v. City of Fresno*, No. 120CV00066DADBAM, 2020 WL 4748166, at *11 (E.D. Cal. Aug. 17, 2020) ("After evaluating 'the content, form, and context' of plaintiff's speech as 'revealed by the whole record,' . . . , the court finds as a matter of law that plaintiff's tort claim involves a matter of public concern.") (simplified); *Drake*, 2015 WL 6168419, at *6 (holding that "even if a jury were to conclude that the context weighed against a finding of public concern, the content and form of the speech could be viewed as weighing strongly in favor of such a finding"). Accordingly, the Court denies the City's motion to dismiss Hall's First Amendment claim.

PAGE 12 – OPINION AND ORDER

### 2.    Public Employee or Private Citizen

Defendants also argue that the Court should dismiss Hall's First Amendment claim on the ground that she was speaking as a public employee, not a private citizen. (Defs.' Mot. at 12-15.) Hall responds that she was acting as a private citizen because reporting discrimination was not within her job duties as a public employee. (Pl.'s Resp. at 10-13.)

"Citizens who accept public employment do not surrender their First Amendment rights." *Ewing v. City of Toledo*, No. 6:18-cv-01626-MK, 2021 WL 3926254, at *4 (D. Or. Mar. 31, 2021) (quoting *Lane v. Franks*, 573 U.S. 228, 231 (2014)), *findings and recommendation adopted*, 2021 WL 3924049 (D. Or. Sept. 1, 2021). "The public has a strong interest in hearing from public employees who are often in the best position to know what ails the agency for whom they work." *Ewing*, 2021 WL 3926254, at *4 (citing *Dahlia*, 735 F.3d at 1066-67).

"[W]hether the plaintiff spoke as a public employee or a private citizen [] is a mixed question of fact and law[.]" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008); *see also Eng*, 552 F.3d at 1071 ("While the question of the scope and content of a plaintiff's job responsibilities is a question of fact, the ultimate constitutional significance of the facts as found is a question of law.") (simplified). The Ninth Circuit considers three "guiding principles" to determine whether an individual spoke as a private citizen or public employee. *Eng*, 552 F.3d at 1074-75. First, "particularly in a highly hierarchical employment setting such as law enforcement, whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties." *Id.* Second, "the subject matter of the communication is also of course highly relevant to the ultimate determination whether the speech is protected by the First Amendment." *Dahlia*, 735 F.3d at 1074-75. Third, "when a public employee speaks in direct

PAGE 13 – OPINION AND ORDER

contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties[.]" *Id.*

Drawing all reasonable inferences in Hall's favor, there are no allegations in the complaint to support a finding that Hall had a duty to investigate or report allegations of sex discrimination up the chain of command in her role as a firefighter trainee. To the extent the City challenges the scope of Hall's job duties, that is a question for another day.[3] The Court finds that Hall has plausibly alleged that she spoke up as a private citizen and not as a public employee. *See Dahlia*, 735 F3d at 1075 (holding that "if a public employee raises within the department broad concerns about corruption or systemic abuse, it is unlikely that such complaints can reasonably be classified as being within the job duties of an average public employee, except when the employee's regular job duties involve investigating such conduct, e.g., when the employee works for Internal Affairs or another such watchdog unit"); *id.* at 1077 ("Although the plaintiff did not explicitly allege that he acted outside his professional duties when he met with [a superior], this is not dispositive because we must draw all reasonable inferences in his favor."); *Anderson v. Multnomah County*, No. 3:20-cv-0555-YY, 2022 WL 3219801, at *13 (D. Or. Jan.

---

[3] Defendants acknowledged at oral argument that whether Hall spoke as a public employee or private citizen is a mixed question of law and fact that the Court typically cannot resolve at the pleading stage. *See Dahlia*, 735 F.3d at 1072-73 ("[W]hen there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment on whether the plaintiff's speech was pursuant to his official duties until after the fact-finding process.") (simplified); *see also Robinson v. York*, 566 F.3d 817, 823-24 (9th Cir. 2009) (holding that the "scope of [the plaintiff's] job duties is a question of fact"); *Eng*, 552 F.3d at 1071 (noting that "the question of the scope and content of a plaintiff's job responsibilities is a question of fact") (simplified); *Freitag v. Ayers*, 468 F.3d 528, 545-46 (9th Cir. 2006) (holding that evaluating the scope of an employee's duties requires "factual determinations"); *cf. Greisen v. Hanken*, No. 3:14-cv-01399-SI, 2015 WL 9484479, at *6 (D. Or. Dec. 29, 2015) ("Drawing all reasonable inferences in favor of the non-moving party, which the Court must do at this stage of the litigation, there is a genuine dispute of material fact as to whether [the plaintiff]'s complaints were made as a private citizen and not as a public employee.").

PAGE 14 – OPINION AND ORDER

4, 2022) ("[The plaintiff] plausibly alleges facts that go to all of the *Dahlia* factors . . . . The [Ninth Circuit] emphasized that, 'in evaluating whether a plaintiff spoke as a private citizen, we must assume the truth of the facts as alleged by the plaintiff with respect to employment responsibilities.' At this stage of the litigation, and under the *Dahlia* factors, [the plaintiff] has sufficiently and plausibly alleged that he was acting as a private citizen[.]") (simplified), *findings and recommendation adopted*, 2022 WL 2452282 (D. Or. July 6, 2022); *Ewing v. City of Toledo*, No. 6:18-cv-01626-MK, 2020 WL 1845814, at *6 (D. Or. Feb. 21, 2020) ("[The plaintiff] had no official duty as Fire Chief to voice his concern about the choices the City made about funding other projects, and, as above, it is of no consequence whether he learned of the budget issues while working as a public employee. As alleged, the facts support that [the plaintiff] spoke as a private citizen."), *findings and recommendation adopted*, 2020 WL 1821453 (D. Or. Apr. 10, 2020); *Cleavenger v. Univ. of Or.*, No. CV 13-1908-DOC, 2015 WL 4663304, at *9 (D. Or. Aug. 6, 2015) ("Although the [plaintiff's] speech may have occurred broadly within the 'chain of command,' [the p]laintiff has presented evidence that he raised broad concerns within the department regarding ongoing misconduct, and that such reporting was outside the scope of his official duties as a [public safety officer]."); *see also Stannard v. State Ctr. Cmty. Coll. Dist.*, No. 1:22-cv-01250 JLT EPG, 2026 WL 523164, at *12 (E.D. Cal. Feb. 25, 2026) (holding that "the subject matter of the speech strongly cuts against a finding that [the plaintiff] spoke as an employee, for there is no evidence or allegation that [the plaintiff's] job duties involved investigating or responding to allegations of sexual assault").

///

///

///

PAGE 15 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court DENIES Defendants' motion to dismiss Hall's First

Amendment claim (ECF No. 8).

**IT IS SO ORDERED.**

DATED this 29th day of July, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge